**Ed MELADY et al., Appellants,**

v.

**Henry COULTER et al., Appellees.**

No. 8181.

Court of Civil Appeals of Texas, Texarkana.

Nov. 27, 1973.

Rehearing Denied Dec. 31, 1973.

See also 489 S.W.2d 156.

Ben Z. Grant, Kirkpatrick, Grant, Dennis & Ammerman, Marshall, for appellants.

Paul W. Anderson, Marshall, L. F. Burke, Earl Sharp, Sharp, Ward & Ross, Longview, for appellees.

CHADICK, Chief Justice.

This case reached the 71st Judicial District Court of Harrison County, Texas, as an appeal de novo from a judgment of the County Court of Harrison County, which, after contest, admitted to probate a written instrument dated October 8, 1970, as the Last Will and Testament of Leola Melady, deceased. The jury in the District Court answered two special issues, finding, first, that Leola Melady did not possess testamentary capacity and, second, that she was induced to make the proffered will as the result of the exercise of undue influence upon her by Archie Melady, her surviving husband and the primary beneficiary thereunder. Probate of the will instrument was denied by judgment of the District Court. The appellees, contestants in the District Court, are Henry Coulter, a brother of the decedent and several other brothers, nephews and nieces, who allege themselves to be persons interested in the estate of the decedent. The proponents of the will in the District Court, Archie Melady and Ed Melady, independent executor thereof, have appealed and are appellants here.

■ Eighteen points of error have been briefed. Nine of these points interpose the question of standing, that is, the legal right of contestants, Henry Coulter and those aligned with him, to appear as parties to the litigation and oppose probate of the will instrument. Standing is questioned on the grounds that these contestants are not *interested* in the estate of Leola Melady, deceased, in the restricted sense the term *interested* is used in the Probate Code, Sec. 10, V.A.T.S. These points are overruled. Proponents' answer to the contestants' pleadings was a general denial filed in the County Court and a demand that strict proof be made of the allegations in the contestants' pleadings, as well as an allegation that contestants had "no standing to attack the will" and prayer in that connection that the contest of the will be dismissed. Complaint was waived. Whether or not the contestants had an interest in the estate that would authorize them to oppose probate should have been, in the words of the opinion in Chalmers v. Gumm, 137 Tex. 467, 154 S.W.2d 640 (Tex.Com.App.Sec.A, opin. adpt. 1941), " * * * raised in limine and before issue was joined on the merits of the case * * *." It was held in *Chalmers* that the trial court erred when, on motion for judgment notwithstanding the verdict, it dismissed the contest for failure to prove the requisite interest. See Newton v. Newton, 61 Tex. 511 (Tex.Sup.1884); 61 T.J.2d Secs. 324, 329, 331.

■ The trial judge permitted a medical doctor's testimony introduced in the County Court will probate proceedings to be read into evidence for jury consideration in the district court trial. The proponents objected to admission of this evidence in the District Court on the ground that in the County Court the medical witness had not subscribed and sworn to such testimony in open court as required by the Probate Code, Sec. 87. The section relied upon, in its pertinent part, says:

"All testimony taken in open court upon the hearing of an application to probate a will shall be committed to writing at the time it is taken, and subscribed, and sworn to in open court by the witness or witnesses, and filed by the clerk; * * *."

The document from which the testimony was read was not tendered into evidence and has not been brought forward. The appeal record before this court, except for unsworn statements of proponents' counsel, is silent upon the question of whether or not in County Court the witness subscribed and swore to his testimony in open court after it was committed to writing. The question briefed has not been preserved for review. Mason v. Mason, 369 S.W.2d 46 (Tex.Civ.App. Houston 1963, no writ); City of San Antonio v. Condie, 329 S.W.2d 947 (Tex.Civ.App. San Antonio 1959, writ ref'd, n. r. e.); Self v. Becker, 195 S.W.2d

701 (Tex.Civ.App. Texarkana 1946, writ ref'd, n. r. e.) ; 4 T.J.2d Appeal and Error. —Civil, Sec. 507; Texas Rules of Civil Procedure, rule 372(b).

■ The language of contestants' amended pleadings* in the County Court alleges the will in question was the product of undue influence; and that alone. Undue influence aside, the pleading does not,' even defectively, allege generally that Mrs. Melady did not have testamentary capacity at the time she made the will. The averments clearly couple her incapacity with undue influence upon her and nothing else. Testamentary incapacity, that is, the absence of a sound, disposing mind and memory, is nowhere alleged as an independent and general ground for voiding the will. Since such issue was not raised by pleading in the County Court it was not permissible on appeal to the District Court for a special issue thereon to be submitted to the jury. Robinson v. Stuart, 73 Tex. 267, 11 S.W. 275 (Tex.Sup.1889) ; Vickery v. Hobbs, 21 Tex. 571 (1858) ; Pierce v. Foreign Mission Board of Southern Baptist Convention, 235 S.W. 552 (Tex.Comm'n. App.1921, opin. adpt.) ; In Re Martin's Estate, 284 S.W.2d 279 (Tex.Civ.App. El Paso 1955, n. r. e.) ; Roberts, Procedural Content of Will Contests, Baylor L.Rev. 316 (1962) ; 61 T.J.2d Wills, Sec. 328.

■ The contestants justify submission of the incapacity issue on the ground that complaint was waived by failure to object to contestants' pleading on this ground. Probate Code Sec. 9 and Tex.R. Civ.P. 90 are relied upon to sustain the court's action. Such statutory and procedural rules have no application. Here there is a failure to plead testamentary incapacity. This is not a case of defective or deficient pleadings; rather it is a case of failure to plead a ground for relief. The cited rules are concerned with defective pleadings. These rules cannot reasonably be construed as requiring a proponent to object to the contestants' failure to assert and plead an additional ground of contest not theretofore defectively plead. Additionally, the Texas Rules of Civil Procedure require written pleadings, unless waived, as a prerequisite to submission of special issues. Tex.R.Civ.P. 67, 272, 279. There is no question here of waiver under Tex.R.Civ.P. 90 and 274 because counsel for proponents timely objected to submission of the issue of testamentary incapacity in written objections to the court's charge. The incapacity issue should not have been submitted and the verdict thereon will not support the judgment. Harkey v. Texas Employers' Ins. Ass'n, 146 Tex. 504, 208 S.W. 2d 919 (1948) ; Morton v. Humber, 399 S.W.2d 831 (Tex.Civ.App. Eastland 1966, no writ) ; Jennings v. Texas Farm Mortgage Co., 124 Tex. 593, 80 S.W.2d 931 (Tex.Comm'n.App.1935, opin. adpt.).

■ The remaining points of error are concerned with the absence, insufficiency and great weight and preponderance of the evidence as it relates to the undue influence issue. The evidence is insufficient to support the jury verdict on the issue. Discussion will be limited, but much of the material evidence in broad summary follows. After a gradual decline in health, Leola Melady died of cancer on October 11, 1970. Three days before death, on October 8, 1970, she signed and published the will in question here. There is testimony

---

* "Leola Melady, deceased, at the time of making said purported will was not of sound, disposing mind and memory because said purported will was made under undue influence exercised over her by Archie Melady; and, if Leola Melady did sign or execute or cause to be executed the said purported will, she was unduly influenced to do so by the compulsions and arguments of, and to avoid the importunities and threats of the said Archie Melady, who was the sole beneficiary under such purported will and yielded to such compulsions, arguments, threats and importunities and allowed the mind of Archie Melady, on account of the lack of resistance of her own, to take the place of her own. Therefore, the said Leola Melady did not voluntarily and of her own free will · and accord have the mental capacity to guide her in the making of such will in disposing of her wordly affairs."

that at the time the will was executed she was in a weakened physical and mental condition and under sedation; other witnesses testified she was alert and clear of mind. Over a period of several years prior to death her husband, Archie Melady, made several physical assaults on her and was placed under a peace bond at one time. The evidence shows, however, that four divorce suits were filed in which Archie and Leola Melady were parties, two final judgments of divorce were rendered and the parties were again married at the time of Mrs. Melady's death. During the hospitalization that preceded death, Archie Melady appeared to discourage visitation by Leola Melady's relatives. There is evidence that the will was prepared by a lawyer in a firm that represented Archie Melady in one or more of his divorce suits with Mrs. Melady. Archie Melady arranged for witnesses to the will, set up an appointment, and was present at the hospital for the signing formalities. A very short time prior to signing, Mrs. Melady told a nurse in attendance that she was going to sign the will but that she did not want to. The will in question was substantially more favorable to Archie Melady than two previous wills shown by the record.

Archie Melady and Leola Melady had remarried a short time before her death. There is no evidence of threats of coercion, assaults or indignities after the last marriage. Nor is there evidence that Archie Melady's conduct at earlier times in any way constituted a present or a continuing coercive influence, threat or intimidation at the time the will was signed. The evidence in this respect is so circumstantial as to arouse little more than speculation and suspicion. See 61 T.J.2d Wills Secs. 68 and 69, and cases there footnoted.

All points of error have been carefully examined and the judgment of the trial court must be reversed for the reasons discussed. Accordingly, the case is reversed and remanded for retrial.

RAY, J., not participating.